J-S22009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| CHENGZAO SUN | : | |
| | : | |
| Appellant | : | No. 593 EDA 2022 |

Appeal from the PCRA Order Entered February 15, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0004005-2019

BEFORE:  BOWES, J., McCAFFERY, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 25, 2022**

Chengzao Sun appeals from the dismissal of his Post Conviction Relief

Act ("PCRA") petition.  We affirm.

This Court offered the following summary of the facts in resolving

Appellant's direct appeal:

> On July 12, 2019, [Appellant] and his wife, Shu Yang, were having dinner when they began to argue.  Yang attempted to walk into the dining room, carrying her bowl of food.  [Appellant] followed her and "tapped" her from behind, causing her to fall into the dining room table, spilling her bowl of food.  Yang then attempted to flee back into the kitchen and [Appellant] followed, holding an aluminum baseball bat.  [Appellant] hit Yang with the bat on her back and legs, resulting in painful bruises.  Yang called the police for help and "home violence."
>
> Police Officers Adrianne Rodriguez and Ryan Moore responded to the scene, where Yang was visibly upset and had fresh, swelling red injuries [from the assault].  [Appellant] had no observable injuries.  [Appellant] stated to Officer Moore that he and his wife had a verbal argument that turned [into a] physical [altercation].  He admitted he lost control, grabbed the baseball bat, and hit his wife with it.

Yang gave a written statement to the police, in which she stated that [Appellant] had pushed her into the dining room table, causing their son to flee upstairs and Yang to run into the kitchen. [Appellant] then followed Yang into the kitchen with a baseball bat, and when she continued to argue with him, hit her with the bat . . . while she attempted to defend herself with a plastic spatula. During this time, [Appellant] and Yang's children were crying and attempting to defend their mother with a golf club.

***Commonwealth v. Sun***, 268 A.3d 401 (Pa.Super. 2021) (non-precedential decision at *1) (record citations omitted).

Appellant was arrested and charged with aggravated assault, simple assault, and harassment. At his jury trial, Yang testified that Appellant had touched her "accidentally" and had not intended to injure her. N.T. Jury Trial, 1/29/20, at 28-29, 46. In response, the Commonwealth introduced Yang's written statement in which she stated that Appellant pushed her onto the dining room table before beating her repeatedly with a metal bat in her back and leg. ***Id***. at 67-68. The Commonwealth also introduced photographs depicting her injuries. On January 30, 2020, a jury convicted Appellant of all charges. ***See*** N.T. Jury Trial, 1/30/20, at 102. The trial court found Appellant guilty of summary harassment. ***Id***. at 108-09. Prior to sentencing, Appellant filed a motion for extraordinary relief, challenging the sufficiency of the evidence and raising a claim of prosecutorial misconduct. The Commonwealth filed an answer, and the court denied the motion without prejudice.

On July 9, 2020, the court sentenced Appellant to forty-eight hours to twenty-three months of imprisonment and thirty-six months of concurrent probation on the aggravated assault conviction. Appellant filed a post-

sentence motion, repeating the arguments from his pre-sentence motion. After both sides submitted briefs and a hearing was held, the motion was denied by operation of law. Appellant timely appealed, challenging the sufficiency of the evidence to sustain his aggravated assault conviction and the effectiveness of his trial counsel for not objecting to the trial court's jury instructions. We affirmed the judgment of sentence, deferring the ineffectiveness issue to collateral review. *See Sun*, *supra* (non-precedential decision at *3). Appellant did not seek *allocatur* review in our Supreme Court.

On December 17, 2021, Appellant filed the timely, counseled PCRA petition that is the subject of this appeal. Therein, he asserted trial counsel was ineffective for not objecting to the trial court's failure to charge the jury on the definition of "serious bodily injury." *See* PCRA Petition, 12/17/21, at 8-17. Appellant also alleged that trial counsel was ineffective for not litigating a motion to suppress his incriminating statements to police and for not objecting to prosecutorial misconduct during the prosecutor's closing argument. *Id*. at 18-31. After the Commonwealth submitted its answer and Appellant filed a reply brief, the court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant informed the court that he would not file a response to the Rule 907 notice and the court dismissed the petition. A timely notice of appeal followed. Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1.     Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to object to the trial court's failure to instruct the jury on the definition of the term "serious bodily injury," as this term is an essential component of the element of the offense of aggravated assault, 18 Pa.C.S. § 2702(a)(4), alleging that Appellant employed a deadly weapon in committing his assault?

2.     Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to litigate a motion to suppress Appellant's incriminating statements given in response to custodial interrogation but which were not preceded by the issuance of **Miranda** [**v. Arizona**, 384 U.S. 436 (1966)] warnings?

3.     Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to object to repeated instances of serious misconduct in the prosecutor's closing argument?

Appellant's brief at 3.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." **Commonwealth v. Diggs**, 220 A.3d 1112, 1116 (Pa.Super. 2019). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." **Id**. "[W]here the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary." **Id**. "It is an appellant's burden to persuade us that the PCRA court erred and that relief

- 4 -

is due." **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa.Super. 2019) (cleaned up).

Appellant's arguments all raise allegations of trial counsel ineffectiveness.[1] Counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. **See Commonwealth v. Becker**, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to effectuate the petitioner's interests; and (3) prejudice resulted. **Id**. The failure to establish any of the three prongs is fatal to the claim. **Id**. at 113.

## I. Aggravated Assault Jury Instruction

In his first claim Appellant argues that trial counsel was ineffective when he failed to object to the trial court's jury instruction concerning aggravated assault. **See** Appellant's brief at 10-25. Appellant was charged with aggravated assault under 18 Pa.C.S. § 2702(a)(4), which required the Commonwealth to prove beyond a reasonable doubt that he "attempt[ed] to cause or intentionally or knowing cause[d] bodily injury to another with a

---

[1] We note that Appellant's PCRA counsel is the same attorney who represented Appellant for his direct appeal. In the PCRA petition, however, Appellant acknowledged that he "effectuated a valid formal waiver of any conflict of interest posed by undersigned counsel's prior representation of [him] on direct appeal." PCRA petition, 12/17/21, at 3 n.1. Since Appellant's claims of ineffective assistance all concern the performance of trial counsel, we discern no impediment to the representation.

deadly weapon." Appellant concedes that the trial court provided the standard jury instruction for the crime charged but alleges that counsel should have requested an additional instruction defining "serious bodily injury" since the court mentioned the term while defining "deadly weapon" in its aggravated assault instruction. *Id*. at 19.

To assess the merits of the underlying claim, we review the trial court's jury instruction pursuant to the following standard:

> [T]he reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

*Commonwealth v. Fletcher*, 986 A.2d 759, 762 (Pa. 2009) (cleaned up).

At issue in the case *sub judice* is the following instruction given by the trial court:

> So to find the defendant guilty of aggravated assault, and this is attempted bodily injury with a deadly weapon, you must find that each of the following elements have [*sic*] been proven beyond a reasonable doubt:
>
> First, that the defendant attempted to cause bodily injury to his wife, Shu Yang. Bodily injury means impairment of a physical condition or substantial pain. In order to find that he attempted to do this, you must find that he engaged in conduct that constituted a substantial step toward causing bodily injury to her.
>
> Secondly, that the defendant used a deadly weapon in the attempt. A deadly weapon, in this case, is any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality that in the manner

- 6 -

in which it was used or intended to be used is calculated or likely to produce death or serious bodily injury – we're talking about a baseball bat – and that the defendant's conduct in this regard was intentional; in other words, it was his conscious object or purpose to cause such bodily injury.

It's important to understand how these elements relate to each other in order to assess whether they've been proven beyond a reasonable doubt. In proving this count of aggravated assault, the Commonwealth need not prove that bodily injury was actually inflicted on the victim. The Commonwealth must prove, however, that the defendant took an action as a substantial step of such a nature that there's no reasonable doubt that it was his conscious object or purpose to cause such injury to the alleged victim.

To make this determination, you may find it useful to ask why the victim did not actually suffer bodily injury as a result of incident. If you find that such injury did not occur only because of something outside the control of the defendant, then you may consider that as evidence as to whether the defendant's substantial step was done with the intent necessary to support a verdict of guilty on this count.

However, particular action by a defendant, although serious, is not in and of itself sufficient evidence from which you may find that he intended to cause bodily injury. This is so because any such action may also be evidence of some less serious outcome the defendant actually intended, such as simply to scare her or to cause some less serious injury.

It is only when after consideration of all the evidence you conclude beyond a reasonable doubt that the defendant's action was a substantial step in a chain of events he consciously set in motion with his intended result being that the alleged victim would actually suffer bodily injury because of his use of the deadly weapon that you may find him guilty of this count. Otherwise, you must find him not guilty. So that's what we mean by attempted bodily injury with a deadly weapon.

Now, also, the way the information reads is, attempts or that he caused bodily injury with a deadly weapon. So either he attempted or he caused bodily injury with the weapon, which in this case I think we can all agree is a baseball bat.

So to find him guilty of this section of aggravated assault, you must find that the defendant caused bodily injury to another, in this case, again, Shu Yang, his wife. Bodily injury, once again, means impairment of physical condition or substantial pain, and that the defendant acted intentionally or knowingly.

A person acts intentionally with respect to bodily injury when it is his conscious object or purpose to cause such injury. A person acts knowingly with respect to bodily injury when he is aware that it is practically certain that his conduct will cause such a result.

Third, that the defendant caused such injury with a deadly weapon. A deadly weapon, again, is any device designed as a weapon and capable of producing death or serious bodily injury or any other device or instrumentality that in the manner in which it was used or intended to be used was calculated or likely to produce death or serious bodily injury.

N.T. Jury Trial, 1/30/20, at 80-85.

Appellant claims that trial counsel should have objected to the court's instruction because the jury was not informed of the definition for serious bodily injury. *See* Appellant's brief at 16. In his view, the jury should have been "instructed on the specific type of injury needed to transform [the] baseball bat into a deadly weapon." *Id*. Since the offense required the use of a "deadly weapon" and the definition of "deadly weapon" includes the use of the phrase "serious bodily injury," Appellant avers that the jury was unequipped to pass judgment on him without being informed of the definition for "serious bodily injury." *Id*. at 17-19.

The PCRA court disagreed, concluding that it had provided the accurate standard jury charge for the aggravated assault crime charged. *See* PCRA Court Opinion, 4/28/22, at 7 (citing Pennsylvania Criminal Suggested

Standard Jury Instructions, Aggravated Assault -- Attempted Bodily Injury with a Deadly Weapon, 15.2702E (Date of Last Revision, May 2016)). The PCRA court further explained that, since the crime at issue did not include an element demanding proof of "serious bodily injury," the Commonwealth was never required to prove that Appellant inflicted or attempted to inflict serious bodily injury. ***Id***. Thus, trial counsel was not ineffective for failing to request an additional instruction defining "serious bodily injury." ***Id***. We agree.

Aggravated assault under 18 Pa.C.S. § 2702(a)(4), required the Commonwealth to prove beyond a reasonable doubt only that he "attempt[ed] to cause or intentionally or knowing cause[d] bodily injury to another with a deadly weapon." Thus, "serious bodily injury" was not an element of the subsection of aggravated assault that was charged. ***Id***. Additionally, as Appellant concedes, the court's instructed tracked closely with Pennsylvania's Suggested Standard Criminal Jury Instruction and the crimes code definition for § 2702(a)(4).[2] ***See*** Appellant's brief at 19.

---

[2]    1. The defendant has been charged in count *[count]* with aggravated assault. To find the defendant guilty of this offense, you must find that each of the following elements has been proven beyond a reasonable doubt:

*First*, that the defendant attempted to cause bodily injury to *[name of victim]*. Bodily injury means impairment of physical condition or substantial pain.

*(Footnote Continued Next Page)*

- 9 -

In order to find the defendant attempted to do this, you must find that [he][she] engaged in conduct that constituted a substantial step toward causing bodily injury to *[name of victim]*;

*Second*, that the defendant used a deadly weapon in the attempt. A deadly weapon is any firearm, whether loaded or unloaded, or ay device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality that, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

*Third*, that the defendant's conduct in this regard was intentional; in other words, that it was [his][her] conscious object or purpose to cause such bodily injury.

2. It is important that you understand how these elements relate to each other in order to assess whether they have each been proven beyond a reasonable doubt. In proving this count of aggravated assault, the Commonwealth need not prove that bodily injury was actually inflicted on the alleged victim. The Commonwealth must prove, however, that the defendant took an action, that is, a substantial step, of such a nature that there is no reasonable doubt that it was [his][her] conscious object or purpose to cause such injury to the alleged victim.

3. To make this determination, you may find it useful to ask why the alleged victim did not actually suffer bodily injury as a result of this incident. If you find that such injury did not occur only because of something outside the control of the defendant [such as the intervention of a third party to stop the attack, the ability of the alleged victim to avoid the full brunt of the attack, or the prompt administration of medical attention that prevented the injuries from developing into the kind that would meet the definition of bodily injury], then you may consider that as evidence as to whether the defendant's substantial step was done with the intent necessary to support a verdict of guilty on this count.

4. However, any particular action by a defendant, although serious [such as pointing a loaded weapon at another], is not, in and of itself, sufficient evidence from which you may find that he or she intended to cause bodily injury. This is so because any such action

*(Footnote Continued Next Page)*

The standard jury instructions are "merely guides" to aid trial judges. **Commonwealth v. Simpson**, 66 A.3d 253, 275 n.24 (Pa. 2013). However, "[o]ur courts have approved a trial court's reliance on standard instructions when those instructions complied with precedent." **Commonwealth v. Clark**, 683 A.2d 901, 907 (Pa.Super. 1996). Appellant has provided no authority, and we have uncovered none, indicating that this instruction was insufficient. Thus, he has failed to persuade us that the standard jury instruction issued in this matter was insufficient absent a supplemental instruction defining "serious bodily injury." Accordingly, we agree with the PCRA court that Appellant's first claim lacks arguable merit.

Furthermore, Appellant has failed to prove that he was prejudiced by the absence of the "serious bodily injury" instruction. Our review of the record confirms that Appellant's defense centered on negating the intent element of

---

may also be evidence of some less serious outcome the defendant actually intended, such as simply to scare the alleged victim or to cause only some less serious injury.

5. It is only when, after consideration of all the evidence, you conclude beyond a reasonable doubt that the defendant's action was a substantial step in a chain of events [he][she] consciously set in motion with [his][her] intended result being that the alleged victim would actually suffer bodily injury because of the defendant's use of a deadly weapon, that you may find [him][her] guilty of this count. Otherwise, you must find the defendant not guilty of aggravated assault.

Pa.S.S.J.I. (Crim) § 15.2702E.

aggravated assault. Appellant claimed he did not have the mindset necessary to commit aggravated assault in two ways: (1) by relying on Yang's trial testimony stating that she initiated the fight and Appellant acted in self-defense, and (2) by emphasizing the importance of Appellant's reputation in the community as someone who was peaceful, law-abiding, and nonviolent. *See* N.T. Jury Trial, 1/30/22, at 20-21 ("the concept of self[-]defense becomes very, very important in this case when you look at the chronology of events."); *id*. at 12 (discussing the importance of character evidence); *id*. at 27-28 (concluding closing argument by stating that Appellant did not have the mindset necessary to commit aggravated assault). Thus, it was undisputed that Appellant used a deadly weapon.[3] Since Appellant has failed to persuade us that an instruction on the legal definition of "serious bodily injury" would have changed the outcome, no relief is due.

---

[3] We note that a prior panel of this Court decided that the evidence was sufficient to sustain Appellant's aggravated assault conviction. *Commonwealth v. Sun*, 268 A.3d 401 (Pa.Super. 2021) (non-precedential decision at *4) (arguing that the Commonwealth did not prove that the bat was a deadly weapon); *id*. at *6 (finding that "the evidence sufficed to prove that the aluminum baseball bat was a 'deadly weapon'"). Thus, it is the law of the case that the Commonwealth advanced sufficient evidence to prove that the bat qualified as a deadly weapon. *See Zane v. Friends Hosp.*, 836 A.2d 25, 29 n.6 (Pa. 2003) ("upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]").

## II.    Motion to Suppress Custodial Statements

In his second claim, Appellant alleges that his statements to the police, both pre- and post-arrest, were inadmissible because he was in police custody and not provided with ***Miranda*** warnings. ***See*** Appellant's brief at 25-26. Accordingly, he asserts that trial counsel was ineffective for failing to seek suppression of these statements. ***Id***. We address each statement individually below.

Appellant's pre-arrest statement occurred when police responded to Ms. Yang's 911 call. Officer Moore entered the garage and asked Appellant to speak with him. The two then spoke inside the garage for "maybe a minute at best."[4] N.T. Jury Trial, 1/29/20, at 147. During that time, Appellant stated that verbal sparring between him and his wife had escalated to a physical attack when he "lost control of himself," grabbed a baseball bat, and struck her with it. ***Id***. at 135.

The law is well-established that:

before law enforcement officers question an individual who has been . . . taken into custody or has been deprived of his freedom in any significant way, the officers must first warn the individual that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed.

---

[4]   Officer Moore captured this interaction on his body camera, which was played for the jury. N.T. Jury Trial, 1/29/20, at 135.

*Commonwealth v. Yandamuri*, 159 A.3d 503, 519-20 (Pa. 2017) (citing *Miranda*, *supra* at 478–79). However, the procedural safeguards of *Miranda* do not apply to police interactions less intrusive than custodial detentions, such as investigatory detentions and mere encounters. *See* *Commonwealth v. Smith*, 172 A.3d 26, 31-32, 34 n.6 (Pa.Super. 2017).

Whether an encounter is deemed "custodial" must be determined by examining the totality of the circumstances. *Yandamuri*, *supra* at 520. When making this determination our Supreme Court instructs courts to consider:

> The existence and nature of any prior seizure; whether there was a clear and expressed endpoint to any such prior detention; the character of police presence and conduct in the encounter under review (for example – the number of officers, whether they were uniformed, whether police isolated the subjects, physically touched them or directed their movement, the content or manner of interrogatories or statements, and "excess" factors stressed by the United States Supreme Court); geographic, temporal and environmental elements associated with the encounter; and the presence or absence of express advice that the citizen–subject was free to decline the request.

*Commonwealth v. Reid*, 811 A.2d 530, 545 (Pa. 2002).

Appellant contends that since he was "commanded" to come into the garage and asked, "what happened," he had been taken into custody and should have first been provided with *Miranda* warnings. *See* Appellant's brief at 25. The PCRA court disagreed, finding as follows:

> Appellant was only subject to a mere encounter or, at most, an investigative detention, when he made his pre-arrest statements. Officers were simply trying to assess the situation after receiving a 911 call reporting a violent incident. Appellant was not under

arrest nor was he being held at a police facility – he was speaking to only one officer in his own garage with the garage door open. The conversation was casual, and Appellant's movements were never guided nor restricted in any way. The characteristics of Appellant's interaction with police are quintessential of that of an investigative detention. Therefore, Appellant was not entitled to receive **Miranda** warnings.

PCRA Court Opinion, 4/28/22, at 11 (citations omitted). We agree with the apt analysis of the PCRA court, which considered the factors mandated by **Reid**. The officer directing questions at Appellant in response to a 911 call concerning a domestic assault constituted an investigative detention.[5] Accordingly, such an encounter did not require **Miranda** warnings. **See Smith**, **supra** at 34 n.6. Thus, Appellant's statement to Officer Moore was not subject to suppression for lack of **Miranda** warnings and trial counsel was not ineffective for failing to pursue a suppression motion on those grounds.

Second, Appellant challenges the post-arrest statement he made after he had been handcuffed and placed in the back of the patrol vehicle. **See** Appellant's brief at 31. Officer Moore testified that the challenged interaction went as follows:

At first he said he was in a defensive situation or condition. And then after that I asked him, I said, could you have removed yourself from the situation? He said yes and I said, you could

_____

[5] An investigatory detention is more intrusive than a mere encounter and, therefore, "carries an official compulsion to stop and respond. Since this interaction has elements of official compulsion it must be supported by a reasonable and articulable suspicion that the person seized is engaged in criminal activity and may continue only so long as is necessary to confirm or dispel such suspicion." **See Commonwealth v. Hampton**, 204 A.3d 452, 457 (Pa.Super. 2019).

have called 911, you know, to let us know what was going on . . . And he said he agreed. And then he . . . asked me the question, what would you do if someone cursed your mother? And he said that's when he just became very angry and lost control, I guess, of himself causing him to go into the room and grab the aluminum baseball bat that his son uses for baseball . . . He said he told her to shut up many times and she didn't.

N.T. Jury Trial, 1/29/20, at 141-42. Appellant contends that since Officer Moore asked Appellant whether he could have removed himself from the situation, that statement constituted an interrogation and thus, **Miranda** warnings were required. **See** Appellant's brief at 27.

The PCRA court disagreed, finding the statement admissible since Appellant began to speak unprompted before Officer Moore asked him whether Appellant could have removed himself. **See** PCRA Court Opinion, 4/28/22, at 11.

Clearly, Appellant began making these statements spontaneously and during "small talk" with Officer Moore. Appellant offered the information voluntarily, Officer Moore only said that he could have handled the situation differently. He did not ask Appellant for details concerning how the situation evolved nor did he ask Appellant why he resorted to using an aluminum bat. Despite Appellant's argument to the contrary, this cannot be considered an interrogation simply because the conversation happened between an officer and a person in custody – that is not the law in Pennsylvania. As Officer Moore's statements clearly do not amount to an interrogation, Appellant was not entitled to receive **Miranda** warnings.

**Id**. at 12 (citation omitted). Again, we agree with well-reasoned analysis of the PCRA court.

It is well-established that "volunteered or spontaneous utterances by an individual are admissible even without **Miranda** warnings." **See**

*Commonwealth v. Gaul*, 912 A.2d 252, 255 (Pa. 2006). There is no question that Appellant was in custody at the time that he made the statements in the back of the patrol vehicle. However, the record reveals that Officer Moore did not ask Appellant to tell him what happened. Instead, Appellant initiated the conversation, volunteering that he was in a "defensive situation." *See* N.T. Jury Trial, 1/29/20, at 141-42. Accordingly, the initial statement was admissible as a spontaneous utterance and the statements that followed merely provided context. Even if Appellant was entitled to *Miranda* warnings before answering Officer Moore's question, no prejudice was suffered since the answer provided was cumulative of the admissible statements Appellant had already made. Therefore, trial counsel was not ineffective for failing to seek to suppress the post-arrest statements and no relief is due on Appellant's second issue.

### III. Prosecutorial Misconduct

In his final claim, Appellant asserts that trial counsel was ineffective in failing to object to prosecutorial misconduct after the prosecutor made multiple allegedly improper comments in her closing argument. *See* Appellant's brief at 22-23. Specifically, Appellant's five allegations of misconduct encompass the following statements: (1) advancing an allegation that Ms. Yang's written statement was "truthful;" (2) explaining contradictions between Ms. Yang's written statement and her trial testimony as due to Appellant's "control" and "abusive behavior;" (3) generalizing that "when laws

- 17 -

are not enforced, abusers are empowered, victims are weakened, and mayhem ensues;" (4) arguing against the credibility of Appellant's character witnesses; and (5) misleading the jury by misstating an element of aggravated assault. *Id*. at 31-40.

The following principles guide our review:

> [A] claim of ineffective assistance grounded in trial counsel's failure to object to a prosecutor's conduct may succeed when the petitioner demonstrates that the prosecutor's actions violated a constitutionally or statutorily protected right, such as the Fifth Amendment privilege against compulsory self-incrimination or the Sixth Amendment right to a fair trial, or a constitutional interest such as due process. To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is fairness of the trial, not the culpability of the prosecutor. Finally, not every intemperate or improper remark mandates the granting of a new trial; reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict.

*Commonwealth v. Koehler*, 36 A.3d 121, 144 (Pa. 2012). With respect to the range of permissible comments in closing arguments, this Court has stated:

> It is axiomatic that during closing arguments the prosecution is limited to making comments based upon the evidence and fair deductions and inferences therefrom. Indeed, given the critical role that the Commonwealth plays in the administration of justice, a prosecutor has been historically prohibited from expressing a personal belief regarding a defendant's guilt or innocence or the veracity of the defendant or the credibility of his witnesses.
>
> However, because trials are necessarily adversarial proceedings, prosecutors are entitled to present their arguments

with reasonable latitude. Moreover, it is well settled that defendants are entitled to a fair trial, not a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

***Commonwealth v. Ligon***, 206 A.3d 515, 519-20 (Pa.Super. 2019) (citations and internal quotation marks omitted). As discussed *infra*, none of the prosecutor's statements precluded the jury from weighing the evidence objectively.

Appellant contests the following highlighted statements by the prosecutor, which we reproduce in their proper context:

Now, Ms. Yang came in here yesterday and **told you a slightly different version of events of what occurred on July 12, 2019**, and I can't tell you why. I can't tell you if she is motivated to protect her husband out of love. We don't know why she's minimizing and changing her story. We don't know if he apologized to her and promised that this was never going to happen again. **We don't know if** she's worried about getting him in trouble or if **she felt pressure from her family or from his, or from him, quite [frankly]**. We don't know if she's worried about losing the dual income, losing a partner who helps her raise these children. We don't know if it was love, embarrassment, or shame.

We don't know, but **maybe she didn't want to come in here and tell the truth again because she didn't want to make him mad. We do know what happened the last time she made him mad**, but we just don't know.

What we do know is that what she told you yesterday and what she told police on July 12th, 2019, were two different versions. What she told police on July 12th as she waited on her driveway outside of her home, injured, waiting for them to arrive for help was not what she told you yesterday.

. . . .

And she claimed yesterday that after that tap that everything ended. She went upstairs, she comes back down, and all of a sudden, conveniently, the defendant has a bat in his hands, not for a criminal purpose, of course, but to teach his [nine]-year-old baseball-playing son the difference between a baseball bat and a golf club.

Does that really make sense? It's a convenient story, and it's one that she has to say because she's trying to fit what she wants you to believe into what actually occurred and what the evidence is. It's convenient. But it doesn't make sense, and it does not even match up with what he said that night.

He tells police after being asked how she got that big bruise on her leg, that it was from a fight. It got physical. He grabbed his son's baseball bat. **That was the truth.**

What she said happened, he grabbed the bat. What he said happened, he grabbed the bat. That's what happened on July 12th.

. . . .

But anyway, going back to the story that she now wants you to believe, and, again, I don't fault her for whatever influence is over her. This is – well, again, we don't know what it is. **We don't know what kind of control he has over her.**

. . . .

Now, if she was going to make up some story and lie to the police, do you think she would say, I said that I want my mother-in-law to die as early as possible? That's not something you make up. That's not something you want to tell someone else that you said. **She told police the truth** - - the good, the bad and the ugly and the embarrassing – and took ownership for what she did that night.

. . . .

And although **Ms. Yang is minimizing and doing everything she can to help her abuser**, she did, again, tell you that **what**

**she told police that night was the truth**.  And she wrote in her statement detailing everything that happened.

It's consistent with the evidence, consistent with her injuries, and consistent with his statement.  And you are allowed to use this as proof as what happened that night.

. . . .

[Trial counsel] called a number of individuals who came into this courtroom and testified to the defendant's character.  And I wasn't surprised at their testimony given that they're neighbors and friends of the defendant and co-workers.  Almost any one of us could find a couple people to come into court and talk about how great we are, how good you are at work and how good you are in the neighborhood.  I highly doubt that the defendant is wielding a bat and running around the neighborhood with it.  And I highly doubt he's bringing the bat to work.

These crimes occur in secret behind closed doors when nobody is watching.  And **true character is what happens when no one is watching.**

And as you saw I didn't even ask them any questions, because their testimony, it means nothing.  Okay, he has a good [reputation] in his workplace and his neighborhood for being nonviolent.

**What about in his house?  His true character is using a bat to shut his wife up.  His true character is ending arguments with injuries despite the fact that his two children are home watching, despite the fact that the person he's using the bat on is his wife, the love of his life, the mother of his children.  That's what his character is.**

**And I submit to you, you can disregard what you heard in this courtroom about his character**.

. . . .

**He may have control over his wife, but he does not control you.  It's your turn to enforce the laws of this country, because when laws are not enforced, abusers are empowered, victims are weakened, and mayhem ensues.**

The defendant is charged with aggravated assault with a deadly weapon. And this metal bat, which is capable of deadly force, qualifies as a deadly weapon. It may not have been invented for that [purpose]. It may not have been purchased by them for that purpose. It may not be in their home at that time for that purpose. **But it was used by the defendant for a criminal purpose to cause bodily injury to his wife. And, therefore, it qualifies as a deadly weapon.**

. . . .

Now, in a few moments you're going to be going back to deliberate, and you'll get a verdict slip, and it lists the charges, aggravated assault. The **defendant is guilty of that because he attempted and intentionally caused bodily injury to his wife with a bat.**

. . . .

As I said before, domestic violence occurs in all kinds of neighborhoods amongst all walks of life in all kinds of families. And just because you're rich or successful or **have control over your wife** doesn't give you a pass to commit domestic violence. It doesn't mean it doesn't occur.

Do right by the evidence. Do right by your oath and find the defendant guilty.

N.T. Jury Trial, 1/30/20, at 32-55 (emphases added).

First, Appellant asserts that the prosecutor improperly vouched for Ms. Yang's written statement as "fact," expressing her personal belief in the guilt of Appellant and the credibility of the evidence. *See* Appellant's brief at 34. The PCRA court found no merit to this allegation. *See* PCRA Court Opinion, 4/28/22, at 15. Instead, the PCRA court found that the Commonwealth's remarks were based on the evidence of record and in response to Appellant's own defense. *Id*. We agree.

It is well-settled that "[a] prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments. Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks." *Commonwealth v. Elliot*, 80 A.3d 415, 443 (Pa. 2013). Accordingly, it was proper for the prosecutor to respond vigorously to trial counsel's closing argument in which counsel repeatedly cast doubt on the credibility of Ms. Yang's written statement, before repeatedly stating that her trial testimony was truthful and "need[ed] to be listened to." *See* N.T. Jury Trial, 1/30/20, at 16-17, 23-24, 26-27; 29.

Furthermore, the prosecutor merely highlighted what the jury knew already, namely, that Ms. Yang either misstated events when she wrote her statement that Appellant pushed her and struck her repeatedly with a metal bat or when she testified that Appellant lightly tapped her by accident with the bat after she threatened him with a spatula. Trial counsel and the prosecutor chose to focus their arguments on attempting to discredit the version of events that did not support their respective theories of the case. Accordingly, the prosecutor's comments were neither unfair nor unduly prejudicial. *See Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa.Super. 2009) ("[T]he prosecutor may comment on the credibility of witnesses."). Therefore, trial counsel was not ineffective for failing to raise a meritless objection. *See Commonwealth v. Eichinger*, 108 A.3d 821, 839 (Pa. 2014)

(reiterating that trial counsel cannot be held ineffective for failing to pursue a meritless objection).

Second, Appellant attacks the prosecutor's comments attempting to explain why Ms. Yang gave inconsistent statements. *See* Appellant's brief at 36-37. The PCRA court aptly summarized why this claim lacked arguable merit as follows:

> The Commonwealth surmised that Ms. Yang may have been fearful to testify in open court due to Appellant's abusive behavior. Again, the Commonwealth was responding to closing arguments made by [t]rial [c]ounsel and only relied on the facts on record to make such statements. In [t]rial [c]ounsel's closing, he devoted a lot of time to highlighting the inconsistencies between Ms. Yang's written statement at the time of the assault and the testimony during the trial. In response, the Commonwealth merely suggested reasonable inferences that could be made from the evidence of record as to why Ms. Yang's statements had been inconsistent. Therefore, the Commonwealth's statements were proper.

PCRA Court Opinion, 4/28/22, at 16.

The PCRA court's conclusions display sound reasoning that is supported by the record. During closing argument, trial counsel attempted to discredit the written statement by contrasting the "stressful" conditions in which the statement was created with her allegedly more credible trial testimony. *See* N.T. Jury Trial, 1/30/20, at 23-25. Additionally, Ms. Yang testified that she had traveled to court that day with Appellant and that the two still lived together. *See* N.T. Jury Trial, 1/29/20, at 27-28. Accordingly, the prosecutor's comments were a combination of a fair inference from the evidence adduced at trial and a rebuttal to trial counsel's closing argument.

*See Commonwealth v. Busanet*, 54 A.3d 35, 64 (Pa. 2012) ("[A] prosecutor is free to present his argument with logical force and vigor so long as there is a reasonable basis in the record for the prosecutor's remarks."). Therefore, we discern no abuse of discretion in the PCRA court's resolution of Appellant's second sub-claim as lacking arguable merit. Since the argument was proper, trial counsel was not ineffective for failing to object.

In his third allegation of prosecutorial misconduct, Appellant asserts that the prosecutor erroneously instructed the jury to convict Appellant so that would-be abusers at large were dissuaded from committing acts of "mayhem." *See* Appellant's brief at 38. After close examination, the PCRA court disagreed, concluding that the prosecutor's statements "simply commented upon the very real dangers inflicted upon the community by domestic abusers, as she was permitted to do. She in no way asked the jurors to imagine themselves as the victims of the domestic abuse." *See* PCRA Court Opinion, 4/28/22, at 17. Again, we discern no abuse of discretion.

The PCRA court's conclusions are supported by legal precedent. In closing argument, prosecutors are generally allowed to remind the jury of its duties and obligations as citizens. *See Eichinger*, *supra* at 837; *see also Commonwealth v. Boone*, 429 A.2d 689, 692 (Pa.Super. 1981) ("[A] district attorney in [her] arguments, within proper limits, may argue for law and order and remind the jury of the danger to the community posed by persons prone to resort to violence."). It is only when comments encourage jurors to imagine

themselves as victims or otherwise attempt to garner the sympathy of the jurors, diverting their attention from the evidence, that the argument exceeds the bounds of propriety. *See Commonwealth v. Youngkin*, 427 A.2d 1356, 1365 (Pa.Super. 1981). Herein, the prosecutor's comments amount to an argument for law and order to be upheld by punishing domestic abusers, which is permissible. *See Boone*, *supra* at 692. Accordingly, trial counsel was not ineffective for failing to object to it.

Fourth, Appellant argues that the prosecutor erroneously provided the jury with a "sharp denunciation of Appellant's character" when she argued against the importance of Appellant's character witnesses. *See* Appellant's brief at 38. The PCRA court disagreed, explaining that the prosecutor's comments were made in fair response to trial counsel's closing argument. *See* PCRA Court Opinion, 4/28/22, at 17.

We find record support for the PCRA court's conclusion. During closing argument, trial counsel emphasized the importance of Appellant's positive character witnesses and the Commonwealth's inability to produce "one person in this community, in this county, in this Commonwealth" who could rebut these witnesses. N.T. Jury Trial, 1/30/20, at 13; *see id*. (describing the character witnesses as people "who put their lives on hold because they wanted [the jury] to know that [Appellant] is law abiding . . . [,] peaceful[,] and nonviolent"). Accordingly, trial counsel was not ineffective for failing to

object, and we have no cause to disturb the PCRA court's resolution of Appellant's fourth sub-issue.

Finally, Appellant argues that the prosecutor misled the jury by improperly informing them that the baseball bat assumed the status of a deadly weapon if they found that Appellant intended to cause "bodily injury," rather than "serious bodily injury." **See** Appellant's brief at 39. The PCRA court found that to the extent the Commonwealth mischaracterized the law, Appellant was not prejudiced by the mistake since the Court properly instructed the jury "that you're not bound by any principles of law mentioned by the lawyers. You must apply the law in which you are instructed by me and only that law to the facts as you find them." **See** PCRA Court Opinion, 4/28/22, at 18 (citing N.T. Jury Trial, 1/30/20, at 9). We discern no abuse of discretion.

In addition to the instruction provided before closing arguments, afterwards the court reiterated that the jury should "apply the law in which I instruct you and only that law" and expressly cautioned them that they were not bound by the arguments of the attorneys. **See** N.T. Jury Trial, 1/30/20, at 60, 63. "The law presumes that the jury will follow the instructions of the court." **Commonwealth v. Chmiel**, 30 A.3d 1111, 1184 (Pa. 2011). There is no evidence proffered by Appellant, and none apparent in the record, to

suggest that the jury did not follow the trial court's instructions. Accordingly, Appellant's final allegation of prosecutorial misconduct fails.[6]

Having reviewed all of Appellant's issues and concluded that none warrants relief, we affirm the order of the PCRA court denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2022

---

[6] Appellant mentions a cumulative prejudice argument, contending that all the alleged instances of prosecutorial misconduct, when viewed together, render an even stronger case that he should be granted a new trial. *See* Appellant's brief at 40. Our Supreme Court has held that, "where a claimant has failed to prove prejudice as the result of any individual errors, he cannot prevail on a cumulative effect claim unless he demonstrates how the particular cumulation requires a different analysis." *Commonwealth v. Wright*, 961 A.2d 119, 158 (Pa. 2008). Since Appellant's one-sentence claim of cumulative error does not provide us with the required explanation, it merits no relief.